Hawthorn Borough *v.* Smith, Appellant.

28

Argued April 9, 1935.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-FELD, PARKER, JAMES and RHODES, JJ.

*M. H. Davis,* with him *A. A. Geary,* for appellant.

*Geo. F. Whitmer,* with him *Daniel M. Geist,* Borough Solicitor, for appellee.

OPINION BY PARKER, J., July 18, 1935:

The plaintiff filed a municipal lien against abutting

property of the defendant for "labor and materials furnished in the grading and paving with concrete slabs" of Brookville Street, a part of state highway route No. 237. A scire facias having issued and an affidavit of defense having been filed, the issue was heard before the court without a jury when judgment was entered for the plaintiff for the amount of the lien.

By ordinance finally approved by the burgess October 4, 1926, the council of the borough authorized the grading, curbing, and paving with concrete slabs of 6,399 lineal feet of Brookville Street, according to plans, specifications, and contract prepared by the State Highway Department of Pennsylvania, and provided that the cost of such improvement should be paid one-fourth by the Borough of Hawthorn and three-fourths by the County of Clarion and the State of Pennsylvania, and "that the borough's share of the cost of such construction or improvement shall be collected from the owners of the real estate abutting on the improvement by an equal assessment on the foot-front." The ordinance also set forth how the charge should be estimated and assessed.

It is not suggested that the paving ordinance, as it was enacted, was not a valid exercise of authority by the borough, but it is claimed that another ordinance passed and approved the same day repealed by implication the provision charging abutting property owners with a share of the cost of the improvement. The sole attack on the lien is based on the fact that the borough, by consent of the electors, authorized the creation of an indebtedness of $9,000 for the purpose of the improvement of the streets and highways in said borough which are a part of state highway route passing through said borough. It is claimed by the appellant that (1) the ordinance creating such indebtedness repealed the provision of the ordinance authorizing the grading and paving which assessed the cost of the im-

provement by the foot-front rule, and that (2) in any event the borough was only entitled to collect from the property owners the difference between the borough's share of the cost of the improvement and $9,000. We shall limit our attention strictly to the objections to the lien raised by the appellant. In fact, as the record is presented to us, we could not do more if requested so to do.

The undisputed facts throw light on the controversy and are essential to a correct solution. There were conversations between the highway department, county, and borough concerning the improvement of Brookville Street, part of a state highway route, which resulted in a proposition that the state and county should pay three-fourths of the cost and that the borough should provide for the remaining one-fourth of the cost. The borough's share of the work was $12,392.60. By an ordinance approved March 23, 1925, council expressed its desire to increase the indebtedness of the borough to $9,114.35, which was full seven per cent of the taxable property therein, "for the purpose of the improvement of the streets and highways in said borough which are a part of State Highway Route," and it provided for an election to pass upon the question. After such approval by the electors was given, council, at a meeting held on October 4, 1926, enacted the ordinance to which we have referred, providing for the grading and paving of the street and the assessment of the cost upon abutting property owners by the foot-front rule and, immediately following such action, passed an ordinance providing for the creation of a bonded indebtedness of $9,000. The ordinance was approved by the burgess on the same day and later the bonds were sold. The amount of the assessment made against the abutting property owners was $11,124.36, about $1,270 less than the cost. In 1927, the borough borrowed temporarily the sum of $3,000 from a bank

and settled with the State Highway Department and contractor for the improvement. By approval of the borough council, the amount due the State and a small sum due the contractor were paid or advanced from the funds so raised.

The basis of appellant's argument is that "a subsequent statute or ordinance incompatible with or repugnant to a former statute or ordinance covering the same subject matter" impliedly and without express words "repeals the former in so far as the two are essentially repugnant." Such is the rule and it does not require the citation of authorities to support it. There is, however, an equally well settled principle employed in the construction of statutes and ordinances thus expressed by Judge ENDLICH: "Statutes enacted at the same session are to be construed, to a certain extent, as one entire act, and therefore it is said, that, in order to make a later enactment repeal a former one, passed at the same session, there must be an express declaration, or an absolute inconsistency; that is, there is in such a case probably a stronger presumption against an intention to repeal, which is unexpressed, than in the case of statutes passed at different sessions" (Endlich on the Interpretation of Statutes, §188). This applies at least with equal force to ordinances passed the same day.

The only conflict suggested is with relation to the provision for assessing one-fourth of the cost upon abutting property owners. We are of the opinion that a construction can be given to these ordinances that leaves no room for a claim of repugnancy, and we will state our reasons for so concluding.

It will be observed that the first of these ordinances definitely charges the borough's share of the cost upon abutting property according to the foot-front rule, while the second ordinance only provides a certain sum

that may be used for the improvement, we will assume, of the same highway without fixing the share to be paid by the borough or prescribing how the fund shall be used. Consequently, the inference is unsupported that the borough thereby undertook to assume as a borough obligation the ultimate responsibility for the entire cost and relieve abutting owners from a liability created the same day. This will become more evident as we discuss the facts.

In any event, $9,000 would not meet the borough's share of the cost by approximately $3,300. Where was this money to come from? It is very definitely asserted by provisions of the ordinances creating the $9,000 indebtedness that the limit of the borrowing capacity of the borough, or right to create additional indebtedness, was $9,114.35, and that this represented full seven per cent of the assessed valuation of taxable property therein (Section 8, Article IX, of the Constitution of Pennsylvania). These facts certainly rebut the inference that the entire cost of the borough's share was to be paid by the borough. We cannot assume the borough was intending to do an act in violation of the Constitution. The provision in the ordinance levying a tax for the year 1927 and annually thereafter until the indebtedness was discharged, sufficient to discharge such indebtedness, was nothing more than a compliance with the requirement of Section 10, Article IX, of the Constitution of this Commonwealth, and an indebtedness could not be created without so providing. Neither are we here concerned with the authority of the borough to borrow the additional $3000 which was secured a year or two later. It may well be that by that time the borrowing capacity of the borough had changed or valid liens may have existed which reduced the net indebtedness (Schuldice v. Pittsburgh, 251 Pa. 28, 95 A. 938).

The record discloses one definite reason for obtain-

ing the consent of the electors of the borough to the creation of an indebtedness of $9,000. The total cost of the improvement was $12,392.60, while the available frontage to be assessed was only sufficient to yield $11,124.36, a deficiency of $1,270. While the record does not disclose the reason for such deficiency, it may well have been that the borough's share for the paving of intersecting streets was deducted or that there was abutting property against which an assessment could not be levied. It may also have been that it was necessary for the borough to settle with the State Highway Department and the contractor for the improvement when it was completed, for it is a matter of common knowledge that frequently such assessments cannot be collected at once and the county and state may not have been willing to assume the responsibility for the collection of such assessments or to forego their right to receive payment upon the completion of the contract. The borough, by its contract with state and county, was the beneficiary to the extent of three-fourths of the cost of the improvement.

It is consonant with reason and justice that the property owners should pay the share placed upon them for the improvement which was a special benefit to their properties. They were much more fortunate than property owners in larger municipalities who are required to pay the entire cost of an original construction. We are of the opinion that there is not any such inconsistency between the two ordinances as requires us to hold that the ordinance providing for the borrowing of funds repealed the provision that a share should be assessed against abutting property owners. Consequently, there was no implied repeal.

What we have said applies with equal force to the contention that the property owner was entitled at least to a credit upon his assessment for the amount

paid by the borough. As we read the ordinances together, the city undertook to do nothing more than finance the proposition and meet such share of the cost as was not assessed against abutting property owners.

Judgment affirmed.